STEPHENS *v.* AMERICAN MUT. LIABILITY INS. Co. *et al.*

(*Knoxville,* September Term, 1948.)

(May Session, 1949.)

Opinion filed June 17, 1949.

NATHAN ORRIS HALE, Knoxville, for plaintiff in error.

CLYDE W. KEY, Knoxville, for defendant in error.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This is a compensation case that was tried in the Circuit Court of Knox County and later appealed to this Court by Mrs. Grace Stephens. The case was placed on the docket to be heard at the October session of the Court at Knoxville. The record has been in the hands of defendants' counsel since last October and for this reason we have been unable to make any earlier disposition of the case.

Mrs. Grace Stephens was employed as a weaver by the American Textile Woolen Company at Sweetwater, Tennessee. She is fifty-seven years of age and had been employed for some time prior to her injury. On March 8, 1943, while at work, she accidentally fell over ''a sack of filling'' (bobbins of yarn used in weaving cloth), and broke her right arm at or near the wrist joint. The proof shows that it was a very severe injury. She was immediately taken to the hospital at Sweetwater for treatment. The injury did not seem to yield to treatment and later she was taken to the St. Mary's Hospital at Knoxville, where she was treated by Dr. Troy Bagwell. Dr. Bagwell appears to be the defendants' physician and surgeon. The bone in Mrs. Stephens' arm had been improperly set and Dr. Bagwell was compelled to break

the arm over and reset the broken bones in order to have proper union and alignment. In addition to the broken wrist, Mrs. Stephens suffered from what the doctors called "traumatic arthritis". She has suffered great pain as a direct result of the injury, including the arthritic condition, and has not done any work since she fell in March 1943. Dr. Bagwell treated her from the time she came to Knoxville until April 1944.

From the time of her injury, up until she brought suit against the defendant, she was paid compensation at the rate of $12.13, which was sixty per cent of her average weekly wage. These payments continued over a period of fifty-five weeks. We find from the record that Mrs. Stephens and the local manager of the insurance company had more than one conversation as to the nature and extent of her injuries, as well as the amount of compensation that would be paid. One such conversation is referred to in petitioner's assignment of error. They reached no agreement. It is conceded that the amount of compensation paid her was never approved by the Court. Mrs. Stephens contended from the beginning that she had lost the use of her right hand and should be paid on the basis of total permanent disability. The insurance company never at any time conceded that she had sustained total permanent disability, although it was conceded that she was entitled to recover compensation. We think this was the situation that existed when Mrs. Stephens filed her suit in the Circuit Court in which she contended that she had lost the use of her right hand completely.

It is not necessary that we here recite the averments in her petition as to the extent of her injuries except to say that she insisted upon being paid for total dis-

ability to her right hand rather than a partial disability. We have read the entire record and it is fair to say that there is much credible proof to sustain her insistence. There is also material evidence to sustain the judgment of the trial court.

The defendants answered the petition, in which denial is made that "she was injured and disabled to the extent averred in said petition." It is further denied that her average weekly wage was $35.00, but that it was only $20.22 and she "was entitled to be paid Workmen's Compensation benefits at the rate of $12.13 per week." In paragraph 5 of the answer it is denied that "petitioner has been rendered totally and permanently disabled," but that "the only disability remaining is limited to not more than forty per cent of the loss of the use of the right hand." In paragraph 6 the defendant pleaded the statute of limitations of one year as provided in Code Section 6884.

The case was heard on oral evidence and the trial judge found as follows (we refer only to the material parts of the opinion):

"There is some medical testimony in the record that the condition of petitioner's hand has reached the stage where it is permanent and that it will not further improve with use and time. There is also medical testimony that there is a slight disability of the petitioner because of the injury to her side. The defendant introduced Dr. Troy Bagwell, who testified that the condition of the petitioner's hand was brought about largely because it was immobilized for such a long period of time that decalcification of the bones of the hand and wrist set in, but that this condition would not continue; but on the contrary calcium would be redeposited in the bones of

the hand when the hand was brought back into use. The oozing of watery substance stained with blood from between the fingers of the hand was caused by the intense swelling at the time the hand was in a cast and immediately after the operation on the wrist. That this swelling caused the skin to crack. The bones in the wrist are now in normal position, and by use will gradually improve. It is apparent from observing the hand that it is extremely difficult, if not impossible, for the petitioner to hold an object, such as a spoon or broom, however, it is obvious that there is not a total disability of the hand.''

It thus affirmatively appears that the Court found as a fact from the evidence and from observation of Mrs. Stephens while testifying that ''there is not a total disability of the hand.''

The defendants' plea of the statute of limitations was sustained. The petitioner, however, was allowed to recover compensation of forty per cent for 150 weeks, less the fifty-five weeks already paid, at the rate of $12.13 per week, the decree reciting that defendants agreed in open court to waive the statute of limitations to that extent.

The petitioner Mrs. Stephens appealed from this judgment, as we have heretofore stated, and has filed several assignments of error, ten in all: (1) there is no evidence to support the judgment and final decree; (2) the trial court erred in sustaining the defendants' plea of the statute of limitations; (3) the trial judge erred in finding the average weekly wage of appellant was only $20.22; (4) the trial court erred in ruling out all evidence that defendant had promised to pay whatever compensation she would be entitled to under the law

on the ground that the same was a compromise; (5) this assignment refers to the exclusion of the evidence of Mrs. Mollie Robinson, in which she was asked about a conversation she had with M. J. Marks, the local manager of the defendant insurance company in its claim department. We only quote a part of the evidence referred to in this assignment, as follows: ''Q. Did you hear Mr. Marks say anything about paying your sister? A. No, he did not say anything about paying her, no certain amount or nothing. He told her when we went in to get the check, he said, 'when we get our statement from Dr. Bagwell,' he said, 'until we do, you have to make other arrangements; we are not paying expenses any longer.' '' (6) the trial judge erred in excluding the evidence of M. J. Marks, which related to a settlement on the basis of Dr. Bagwell's report as to the extent of her disability; (7) the trial judge erred in following the rule of the common law requiring a strict construction of the statutes in derogation of the common law; (8) the Court erred in failing to take the most favorable view of appellant's claim; (9) the trial judge erred in failing to hold that appellant's accidental injuries to her right hand, arm, shoulder, and back incapacitated her from working at an occupation that would bring her an income.

█ █ It is not necessary that we discuss all the foregoing assignments of error. The vital issue of fact is as to the extent of Mrs. Stephens' disability. If there is material evidence to support the finding of the trial judge, we are bound by it, such finding being conclusive on this Court. In *Borden Mills, Inc.* v. *McGaha*, 161 Tenn. 376, 32 S. W. (2d) 1039, it was held, ''Where the evidence is conflicting the finding of facts by the trial judge can-

not be disturbed on appeal." Again in *Diamond Coal Co.* v. *Jackson*, 156 Tenn. 179, 299 S. W. 802, it was held: "The finding of facts by the trial court as to the extent of the injury when supported by some evidence is binding upon this court." It is unnecessary that we cite other cases to the same effect. It is not the province of this Court to rule that the trial judge should have believed the testimony of one group of witnesses against another, and in the instant case we shall not say that the trial judge should have believed Dr. Smith instead of Dr. Bagwell as to the nature of Mrs. Stephens' injuries Moreover, Dr. Bagwell attended and treated Mrs. Stephens for about a year and no question is made as to his ability or integrity. Furthermore, the trial judge observed Mrs. Stephens' condition. In considering her petition for additional findings of fact, he said, "The Court is satisfied from the proof and *from observing the petitioner in giving her testimony*, that by continued use on the part of the petitioner this condition will improve, and that all the other complaints of this petitioner, that she is unable to sleep at night, unable to eat regularly, and *do any kind of work, are exaggerated. The Court does not believe that the petitioner's condition is getting worse and more painful, but the contrary.*"

Considering Dr. Bagwell's testimony and the foregoing statement of the trial judge as to his observation of Mrs. Stephens, not to mention the consideration he gave other evidence, the issue is foreclosed. We think the above statement of the trial judge makes it unnecessary that we consider a number of assignments of error above mentioned. Moreover, if the trial judge was correct in sustaining a plea of the statute of limitations, all errors complained of are immaterial. We think the Court was

correct in sustaining a plea of the statute of limitations. Code Section 6884 provides:

"The time within which the following acts shall be performed under this chapter shall be limited to the following periods, respectively.

"(1) Actions or proceedings by an injured employee to determine or recover compensation, one year after the occurrence of the injury.

. . . . . . .

"(3) Proceedings to obtain judgment in case of default of employer for thirty days to pay any compensation due under any settlement or determination one year after such default."

We are satisfied from the proof that there was never an agreement between the parties as to the nature and extent of Mrs. Stephens' disability. She was bound to know that the amount of compensation she was drawing was never approved by the Court and she knew that the local agent would not agree to an amount until Dr. Bagwell had filed his report. There being no agreement between the parties as to the extent of her injuries, it became necessary that she file her petition in court to have that important question determined, and the law expressly provided that she had to bring this action within one year from the date of her injury. This she failed to do.

It is argued by Mrs. Stephens' counsel that the defendant insurance company by paying doctors' bills, hospital expenses, and compensation for fifty-five weeks, lulled her into a feeling of security, that is, that she would eventually be compensated for total permanent loss of her right hand; that the statute of limitations would not begin to run until thirty days after the last payment was made. The basis of the foregoing insistence is that

there was a settlement between the injured employee and the defendant and that the holding of this Court in *Collins* v. *Murray*, 164 Tenn. 580, 51 S. W. (2d) 834, is controlling. Counsel for petitioner rely upon this case and some other cases. In that case the employer entered into an agreement with the widow of the deceased employee, under which she was paid compensation for 208 weeks. The insurance company defaulted and the employer was held liable for deferred payments. The insurance carrier and employer were held to be principals and jointly liable, whether the agreement was approved by the court or not. Now the reason this case is not applicable here is that Mrs. Stephens and her employer—insurance carrier—were not making or receiving payments under any agreement between them. On this point the local manager Marks testified:

"Q. Did you mean to pay her according to Dr. Bagwell's report when it came in? A. I meant to continue paying her until I received the report from Dr. Bagwell giving me the permanent impairment and her desire to settle on the basis of permanent impairment, or continue the compensation until so many weeks had been paid."

There is an intimation on the brief that Marks suggested a fifty per cent disability to the hand.

The basis of the plaintiff's suit is that on April 10, 1944, when she first ascertained that defendant only intended to pay her compensation of forty per cent permanent disability in the loss of the use of her hand, she considered herself at that time totally and permanently disabled, and she brought suit "to get out of accepting such settlement which she considered unjust." It is further argued on the brief: "The suit was delayed pending the arrival of Dr. Bagwell's report, and when

it came through and appellant found out what it was she was very much dissatisfied and filed her suit to bring the matter to the attention of the court, and to pray for the protection of the court.''

In *Collins* v. *Murray, supra,* the statute was tolled thirty days after default in payments under a valid contract. In the instant case, there was never any agreement and suit was finally brought because plaintiff was disappointed and dissatisfied with the report of the insurance carrier's doctor, that is, that the company would not pay her for total permanent disability to her arm. We find no evidence to support the plaintiff's claim that she was lulled into a feeling of security by the employer or insurance company. We have searched the record in vain to find some evidence that will justify plaintiff in believing that the insurance company would settle upon the basis of total permanent disability. If the defendant did not mislead her in this regard by some word or act that could be adjudged a breach of faith, there is nothing to prevent the running of the statute against the plaintiff's suit.

In *Gaines* v. *Du Pont Rayon Co., Inc.,* 168 Tenn. 361, 79 S. W. (2d) 40, the employer recognized the employee's injury and paid medical bills and compensation for eight weeks' disability. The Court held this did not amount to a new promise upon which the employee could rest his action to recover further compensation after the statutory period of limitation of one year had run. It is only when the employer binds himself by an agreement to pay a stipulated sum as compensation that a new promise thus arises to toll the statute.

In *Moore* v. *Hines,* 170 Tenn. 456, 461, 95 S. W. (2d) 928, 930, it was held the ''settlement . . . will pre-

vent the running of the statute of limitations until default in said settlement." It was further said, ". . . that such a settlement or determination *amounts to a new promise* which will toll the statute." (Italics ours.)

We think it is clear from our cases that where there is a settlement between the parties, if not approved by the Circuit Court as provided by statute, it "would not [prevent] a suit for compensation by the employee within one year after the injury." *Klinke Bros. Dairy Co.* v. *Maharrey,* 171 Tenn. 397, 399, 104 S. W. (2d) 418, citing *Moore* v. *Hines, supra.*

It thus clearly appears that the voluntary payments of compensation to Mrs. Stephens, including all medical bills, without any understanding and without the Circuit Court's approval, was no bar to her right to sue her employer at any time before the tolling of the statute of limitations of one year, to recover for total and permanent loss of her hand. Having delayed bringing suit for more than one year after her injury, her claim is barred.

It is true that the defendant was very considerate of the plaintiff in providing all reasonable aid as a result of her injuries, as shown by the following items of expense which the employer and insurance carrier met:

| | |
|---|---|
| Sweetwater Hospital | $27.00 |
| St. Mary's Hospital | 64.59 |
| Dr. Young | 14.50 |
| Miss Lucille Archer, anesthetist, | 15.00 |
| Mrs. Mollie Robinson, sister of the plaintiff, for boarding plaintiff, etc. while in Knoxville for treatment, | 186.00 |
| Dr. M. Winer | 26.50 |
| Dr. Troy Bagwell | 175.00 |

making a total of more then five hundred dollars. But this should not be considered as effectively lulling the plaintiff into the belief that the defendant would meet her demands for permanent total disability. If we are to thus interpret an employer's conduct, the more generous he is in caring for an injured employee, the more likely he is to effectively cut himself off from interposing a valid defense to a possible exorbitant and unreasonable claim.

In holding that the plea of the statute of limitations was good, the trial judge nevertheless allowed plaintiff a recovery on the basis of a forty per cent partial permanent disability. This finding of the Court is not questioned by appellant, but we are asked to hold that the Court should not have thus limited the amount. We have heretofore pointed out that the finding of the trial judge is conclusive upon this Court as to the facts showing the extent of an employee's disability. We have referred to the trial judge's comment on the evidence, including his statement that he observed Mrs. Stephens' apperance when she testified as a witness.

It results that the several assignments of error are overruled and the judgment of the Circuit Court is affirmed.

All concur.